# Robinson *v.* Allison.

## *Ejectment.*

1. *Possession presumed to be held subordinate to legal title unless contrary is shown.*—If, after a sale of lands under execution, the defendant continues to occupy the premises until his death, and afterwards they were occupied by his widow until her death, which occurred about twenty years after such sale, it will be presumed that such occupation was subordinate to the legal title, and the burden of proving that it was in hostility thereto, rests upon him asserting it.

2. *Possession under dower right unexplained, not hostile to reversioner.* In such case occupation by the widow of the lands, they embracing the home of her husband at the time of his death, will be referred to

[Robinson v. Allison.]

her right of dower and quarantine, in the absence of evidence to the contrary.

3. *Judgment in unlawful detainer in favor of dowress, no bar to eject-ment by purchaser.*—A judgment in unlawful detainer in favor of a dowress, is no bar to an action of ejectment by the purchaser of her deceased husband's lands under execution sale, and its only effect is to show that she was in possession at the time of such suit in unlawful detainer. (*Bishop v. Truett,* 85 Ala. 376, and *Brady v. Huff,* 75 Ala. 80, *distinguished.*)

4. *Parties to chancery suit to perfect title.*—In proceedings in chancery by a derivative purchaser from the original purchaser of lands at an execution sale to perfect the title from such purchaser, the widow of the defendant in execution is not a necessary or proper party.

5. *Abstract charge properly refused.*—An instruction requested, predicated upon supposed facts, which are not in evidence, is properly refused.

6. *Possession of lands under an agreement not complied with, not adverse.* Even if the proof showed that the purchaser of lands at execution sale who took title in his own name bought for the benefit of the wife of the defendant in execution and permitted her to go into possession under an arrangement with her husband, her right to continue in possession, would depend on the terms of, and compliance with the agreement.

7. *Jurisdiction of courts presumed in collateral proceedings.*—Though the record of the judgment under which sale of the defendant's land was made, fails to show affirmatively service of notice on the defendant, the judgment being in all other respects regular, it will be presumed on a collateral attack, that the court had jurisdiction.

8. *Waiver of objection.*—If the record of a judgment introduced in evidence in the court below is not objected to on account of an alleged omission therein, and is not called to the attention of the Appellate Court, in brief or argument, until made the ground for an *ex parte,* application for rehearing, it is waived.

APPEAL from Madison Circuit Court.

Tried before Hon. H. C. SPEAKE.

Walter B. Robinson brought ejectment against Margaret Allison, and others, and on the trial the plaintiff asked the following charges:

(1) "If the jury find from the evidence that Martha Allison was the widow of Samuel H. Allison, and occupied the property as such widow, and that she claimed the property, her claim is presumed to be in accordance with her right as such widow; and if her claim was as such widow, there is no question of adverse possession by defendants." (2) "If the jury find from the evidence that James P. Robinson, after the conveyance of the property in dispute by the marshal, made an executory contract of sale, in 1867, with Samuel H. Allison, a presumption of payment of the purchase-money, would not arise, until the lapse of twenty years, in 1887, unless it is established that the money was actually paid, and the statute of limitations would only run from that time, and ten years must elapse from the time the statute begins to run, before the plaintiff is barred." . . . .

[Robinson v. Allison.]

The court gave the following charge at the request of the defendants : "If the jury believe from the evidence that the property in dispute was purchased by James P. Robinson at sale by United States Marshal in 1867, for the benefit of Mrs. Allison, mother of the defendants, and that from the date of that purchase Mrs. Allison and her husband, until his death, and she after his death, and these defendants as devisees under her will, were continuously in actual possession of the property until the institution of this suit, claiming it as Mrs. Allison's property, under an arrangement between said Allison, and said James Robinson, that the said purchase by said Robinson was for Mrs. Allison's benefit, then the verdict of the jury should be for the defendants."

BRICKELL, SEMPLE & GUNTER, and LAWRENCE COOPER, for appellant, contended that the holding after the marshal's sale was in subordination to the legal title, citing 3 Brick. Dig. 16,. § 1, *et seq*; *Neapan v. Dee*, 2 Smith Lead Cases, 722. That the burden of proving hostility to the true title is on the party asserting it.— *Collins v. Johnson*, 57 Ala. 304; *Potts v. Coleman*, 57 Ala. 221; *Dothard v. Denson*, 73 Ala. 541.

HUMES, SHEFFEY & SPEAKE, for appellees, cited 3 Brick. Dig. p. 325, § 48, *Ib.* 580, § 79; *Murray v. Hoyle*, 92 Ala. 563; *Sharp v. Robinson*, 76 Ala. 343; *Bernstein v. Humes*, 60 Ala. 582.

COLEMAN, J.—The action is in ejectment, and was instituted in March, 1888, by appellant as plaintiff to recover a lot, described in the complaint. The evidence shows that Samuel H. Allison purchased the lot in controversy in 1840, erected a dwelling thereon in 1842, and occupied it until the time of his death in 1870. He left surviving him his widow Martha Allison, who continued to occupy the house and lot until the time of her death which occurred in 1887. The defendants in the ejectment suit are the children of Samuel H. and Martha Allison. The defendants claim title through their mother, Martha Allison, and not as heirs or distributees of their father Samuel H. Allison.

The evidence shows, that by virtue of an execution issued against the said Samuel H. Allison from the District Court of the United States for the Northern District of the State of Alabama, the marshal levied upon, and after proper notice, sold the lot in controversy, and that at the sale James B. Robinson became the purchaser. The purchase-

[Robinson v. Allison.]

money was paid, and a deed dated May 6th, 1867, was executed to him by the marshal. The regularity of the marshal's sale, and that his deed to James B. Robinson was effectual to convey whatever title and interest Samuel H. Allison held and owned is not questioned.

Evidence was introduced to show that the bid of James B. Robinson exceeded the debt and interest and cost of suit, against Samuel H. Allison, and the excess was paid by the marshal to Samuel H. Allison. James B. Robinson and Samuel H. Allison were brothers-in-law. James B. Robinson died in 1877.

In 1880 John Otey Robinson executor of the last will and testament of James B. Robinson, acting under a supposed power contained in the will, sold and conveyed the lot in litigation, to Walter B. Robinson, the plaintiff. After his purchase in 1880, Walter B. Robinson, instituted a suit before a justice of the peace for unlawful detainer to recover possession of the property against Martha Allison, which resulted in a judgment for the defendant. Immediately thereafter he instituted the statutory action of ejectment in the Circuit Court against her to recover the property. On the trial of this action it was held, that the will of James Robinson, did not authorize the executor John Otey Robinson, to sell and convey the real estate of the testator, and that the deed to plaintiff was invalid. This ruling was affirmed by this court, in 74th Ala. 254. The effect of this decision was to defeat the ejectment suit then pending. Proceedings were then begun and concluded in the Chancery Court and a decree rendered by that court in December, 1885, by virtue of which the title of Walter B. Robinson, the plaintiff, to the lot was perfected, as to all persons claiming in privity to James B. Robinson. The present suit was then instituted against the children of Martha Allison who are her devisees, their mother having died, prior to its commencement.

As we have said there is no qestion that James B. Robinson, by his purchase at the marshal's sale and the deed of conveyance, became the owner entitled to the possession of the property, as against Samuel H. Allison, and those who claim in privity to his title. There is no evidence in the record of any understanding or agreement between him and Samuel H. Allison, or any other person to show the terms or conditions upon which Samuel H. Allison, continued in possession of the lot after its sale by the Marshall and purchase by James B. Robinson. In fact there is no statement of any witness bearing on the question except a

declaration testified to without objection made by Samuel H. Allison, to J. H. Beadle, before the sale by the marshal to the effect "that he was in debt, that he was going to let his property be sold by the marshal, and he was going to get his brother-in-law, James B. Robinson, to buy it in for his wife, Martha Allison." This declaration not made in the presence of or even brought to the knowledge of James B. Robinson, can not be considered as evidence against him. In the absence of all proof as to the terms and claim of right to possession, such possession is presumed to be subordinate to the legal title. The rule in such cases, is as follows : When the proof shows that possession is held by one, and the title by another, the law not favoring wrong, will presume, that the possession is held subordinate to the legal title. The burden of proving that the possession is held adversely and in hostility to the true title, rests upon him asserting it. To constitute an adverse holding against the true owner, it must be shown that the true owner had knowledge of the adverse holding, or it must be so open and notorious as to raise a presumption of notice to him, the equivalent of actual notice.—*Lucy v. Tenn. & Coosa R. R. Co.*, 92 Ala. 250 ; *Dothard v. Denson*, 72 Ala. 544 ; *Alexander v. Wheeler*, 69 Ala. 332 ; 57 Ala. 304 ; *Bishop v. Truett*, 85 Ala. 376.

Under these principles of law, applied to the evidence, we are forced to the conclusion that the possession of Samuel H. Allison, during his life-time, was not adverse to the title and claim of James B. Robinson, and that he left no inheritable estate in the lands. After the death of Samuel H. Allison, the widow Martha Allison continued in possession, with her children, and occupied the premises as a home until her death in 1887. The same principles of law apply to her possession as to that of her husband, so far as such possession can be regarded as hostile to the true owner and legal title. In the absence of proof that she claimed possession adversely to the owner, the law presumes that she held under the legal title. As the widow of Samuel H. Allison occupying the lot and dwelling as a home and residence at the time of his death, and not having conveyed away her dower interest in the lot, she was entitled to its possession and rents, in her own right until her dower was set apart to her. No steps were ever taken by her or any one else to have dower set apart and allotted to her during her life-time. In the absence of proof showing otherwise, the law presumes that her possession during widowhood was by virtue of her right to quarantine

[Robinson v. Allison.]

and dower in the lot and dwelling. Rightful possession under a valid claim to quarantine and dower is not adverse to the reversioner, neither is such possession available to originate or perfect an adverse holding. After the death of Samuel H. Allison, his widow being entitled to quarantine and dower in the lot and dwelling and in possession in such right, she could not be dispossessed by the holder of the legal title, by unlawful detainer proceedings or by suit in ejectment. We do not assert that a widow in possession of property, and out of which she is entitled to have her dower carved not being entitled to the whole interest, but only to the possession of the whole, as in the case of a dwelling house, until dower is assigned, can not assert an adverse claim against the owner of the interest in excess of her dower. Under the law one entitled to a present beneficial interest in property out of which the widow is entitled to quarantine and dower has authority to institute proceedings to have her dower interest separated and assigned. The principle we declare is, that having a right to quarantine and dower, and being in possession, in the absence of proof otherwise, the law refers the possession to the legal right, and such possession is not adverse to the legal title or reversion, and such possession will not ripen into a legal title, however long it may be continued, as against the legal title and true owner of the reversion.

It is contended by appellees that the judgment in the unlawful detainer suit in favor of Mrs. Martha Allison is conclusive on plaintiff's right to recover in the present action, and we are referred to *Bishop v. Truitt*, 85 Ala. 376, and *Brady v. Huff*, 75 Ala. 80, as sustaining the contention. We do not think the principles of law as to the effect of a judgment in an unlawful detainer suit, apply to the case at bar. In the latter case, *Brady v. Huff*, both derived title from a common source, William Huntingdon, and in addition to his title by conveyance by deed, Huff relied upon adverse possession of more than ten years. One question of controversy was as to the extent of Huff's possession whether of the whole or only a half interest in the land. Huff introduced in evidence two judgments against Brady in favor of Wallace from whom he purchased, for forcible entry and detainer. The court held, "actions of this class are strictly possessory and can be sustained only by proof of prior actual possession. The fact of Wallace's actual possession of the *entire* tract of land in controversy must be regarded as *res adjudicata* as to Brady. It was a point necessarily involved and one which must have been actually

[Robinson v. Allison.]

decided in these possessory actions, as a finding upon it was necessary to uphold the two judgments which were adverse to Brady and in favor of Wallace."

In the case in 85 Ala. both Bishop and Truitt, derived title from the same source, Elisha Wood. Truitt sued in ejectment and relied upon a title acquired under a purchase and adverse possession for more than ten years. He had no deed of conveyance. Bishop relied upon deeds of conveyance from Woods, first to Norman and from Norman to himself. As evidence that the possession of Truitt had not been continuous, Bishop introduced the proceedings in an unlawful detainer suit instituted by Norman against Truitt, in which Norman recovered possession of the land. It was held that "it might be shown that the continuity of his possession was broken by dispossession under the judgment of a court of competent jurisdiction, in a suit in which the judgment is conclusive as to his right of possession, and its character and extent are determined adversely to the plaintiff, that a judgment (for plaintiff) in such action is an adjudication that the defendant therein did not have and hold adverse possession at the time the action was instituted; that his possessory interest . . had terminated and the plaintiff therein is lawfully entitled to possession."

The estate or merit of titles were not and could not be enquired into in the action of unlawful detainer.—*Houston v. Farriss*, 71 Ala. 570.

Many facts are effectual to defeat a recovery in an action of unlawful detainer. Three years is the limitation after the right to possession accrues, within which the suit must be brought.—Code, § 3390.—*Posey v. Pressley*, 60 Ala. 251. Actual possession by the plaintiff prior to the unlawful detainer must be shown.—*Womack v. Powers*, 50 Ala. 5; *Nicrosi v. Phillippi*, 91 Ala. 299. If suit be begun before the termination of the tenancy under which possession was taken, the plaintiff must fail.—*Rainy v. Capps*, 22 Ala. 288.

And in the present case, if the plaintiff in the unlawful detainer suit failed to show a leasing or an attornment, which operated an estoppel on the tenant, Margaret Allison might as well have defended her possession on her right to quarantine and dower. We can not see that the judgment in the unlawful detainer suit is entitled to any weight in the ejectment suit in which the titles are involved, further than the fact that she was then in possession. It would require other proof in addition to the judgment in the unlawful detainer action to show that such possession was adverse to the legal title. The legal presumption would refer her pos-

[Robinson v. Allison.]

session to her right to dower. Dower is not an inheritable estate. It terminated at the death of the widow. The children of Martha Allison inherited nothing and can claim nothing by reason of the possession of the lot by their mother, acquired and held by her by virtue of her right to quarantine and dower.—*Clancy v. Stephens*, 92 Ala. 577.

Mrs. Martha Allison was not a necessary or proper party to the proceedings in the Chancery Court, instituted by the executor of James B. Robinson to perfect the title in William B. Robinson, and the deed executed in accordance with the decree of the Chancery Court had the effect to perfect the title in Wllliam B. Robinson as against the heirs and devisees of James B. Robinson, all of whom were made parties. Whatever right or title James B. Robinson could assert in the present action, were he living, and the plaintiff, is equally available to William B. Robinson, the present plaintiff. The first charge requested by the plaintiff asserted the law as herein declared and ought to have been given.

There was no reversible error in refusing the second charge requested by plaintiff. It was abstract, there being no evidence in the record upon which to predicate it. The charge given for the defendants should have been refused.

There is no evidence, that James B. Robinson bought the premises for the benefit of Mrs. Allison, or that an arrangement was made for her benefit, and for this reason the charge was abstract, and evidently was injuriously misleading. In the next place, the conclusion upon the predicate, was not correct. It would not follow as a legal conclusion that if the purchase had been made for the benefit of Mrs. Allison, and that she was permitted to go into possession of the property and remain in possession under an arrangement made with James B. Robinson, that the verdict should be for the defendant. It would depend altogether upon the terms of the arrangement, and whether they had been complied with by Mrs. Allison. But there is no evidence in the record of any arrangement or purchase, for her benefit.

Reversed and remanded.

Response to Application for Rehearing.

COLEMAN, J.—In the application for rehearing it is urged, that the record of the judgment recorded in the Federal Court, upon which the execution issued, does not affirmatively show service of notice upon the defendant in execution.

The court is one of general jurisdiction. The judgment

[Payne v. Crawford.]

is in all respects regular. In collateral proceedings, jurisdiction of the court, must be presumed, unless it affirmatively appears upon the face of the judgment, or until it is affirmatively shown that the court was without jurisdiction. *Weaver v. Brown*, 87 Ala. 533; *Hunt's Heirs v. Ellison's Heirs*, 32 Ala. 173; *Williams v. Haynes*, 77 Tex. 283; s. c. 19 Am. St. Rep. 752.

If the question was one of merit, no objection was made to the introduction of the judgment in the court below, nor was the question raised in the trial nor in this court by argument or in brief at the submission of the cause, nor until after final judgment in this court. We can not sanction the practice of bringing up new questions for the first time, in an *ex parte* application for rehearing.

Application is overruled.