272 So.2d 895

Susie GREEN

v.

FIRST NATIONAL BANK OF TUSKALOOSA, d/b/a First Charge Service.

6 Div. 93.

Court of Civil Appeals of Alabama.

June 23, 1971.

Rehearing Denied July 28, 1971.

Maxwell Peters, Tuscaloosa, for appellant.

James A. Turner, Tuscaloosa, for appellee.

BRADLEY, Judge.

Susie Green, appellant, was sued on an open account by the First National Bank of Tuskaloosa, d/b/a First Charge Service, appellee, first in the Tuscaloosa County Court and then in the Circuit Court. The account was for $371.00 resulting from the use of a charge card issued by appellee. The case was tried before a jury in the Circuit Court and there was a verdict for appellee in the amount claimed. Motion for new trial was overruled and notice of appeal to this court was filed.

In 1967 appellee instituted a local charge account service for its customers. This service was called "First Charge Service," and was honored by about 400 Tuscaloosa merchants. Appellee, in instituting this service, issued charge cards to each person who had an account with the appellee. The appellant and her husband had a joint checking and joint savings account with the First National Bank of Tuskaloosa. The charge cards issued to appellant and her husband were not requested; they were mailed to them by the appellee without any application therefor.

The names imprinted on the cards were Stephen Green, Jr. and Mrs. Stephen Green, Jr.

The bank ledger sheets on which the various charges were recorded were in the names of "Stephen Green or Susie Green." This ledger sheet was kept solely by the appellee, and appellant at no time had knowledge of the way her name appeared on this ledger sheet.

In the beginning the account, as evidenced by the billing statement, was in the name of "Mr. and Mrs. Stephen Green, Jr." The account was also represented by one number—40–119—even though two cards had been issued.

In July 1967, without any request from appellant or her husband, the name on the billing statement was changed by appellee to read, "Stephen or Susie Green, Jr." The number remained the same, and the bank ledger sheet remained the same.

Then in July 1968 the billing statement was again changed to read, "Mr. Stephen Green, Jr." The account number and bank ledger sheet remained unchanged. The billing statement was sent in the name of "Mr. Stephen Green, Jr." until the account was closed by appellee.

The record reflects that the various changes made in the billing statements were neither requested by the appellant nor her husband, and it does not appear that appellee communicated its reason for making these changes to appellant.

During the 22 months that appellant and her husband used the "First Charge Service," there was a total of $897.76 charged to said account, $453.59 being charged by appellant and $444.17 charged by her husband.

At the husband's death in 1969 the balance of the account was $371.00, which included a finance charge of one and one-half percent per month on the unpaid balance.

The charges made to this account by the appellant and her husband consisted of those items that a family of moderate means would purchase, such as food, clothing, auto repairs, gasoline and oil for the automobile, household goods and appliances, etc.

After the death of appellant's husband, appellee filed suit against appellant for the entire balance of the account—$371.00—which included the monthly finance charge.

Appellant made twelve assignments of error, but did not, in brief, insist on as-

signments eight through eleven, which we consider to have been waived. Supreme Court Rule 9.

Assignment of error one asserts that the trial court erred in overruling the motion for a new trial. One of the grounds of the motion for new trial was that the evidence failed to sustain the verdict of the jury.

This assignment of error requires us to examine the evidence to determine the nature of the charge account between appellee, the issuer of the charge card, and the appellant, the recipient of an unsolicited charge card. In other words, we are called on to decide what agreement or contract, if any, existed between appellee and appellant.

This same issue is raised by assignments of error three and four, wherein appellant says that the trial court erred in refusing to give the general affirmative charge with and without hypothesis.

The facts in this case are undisputed. Appellee issued, without being solicited, charge cards to its customers. Appellant and her husband had a joint checking account with First National Bank of Tuskaloosa prior to the issuance of the charge cards. Appellant was issued a card in the name of Mrs. Stephen Green, Jr. Appellant's husband was issued a card in his name. The two cards had the same account number imprinted on them. Appellee initially mailed billing statements to Mr. and Mrs. Stephen Green, Jr., addressed to the residence of appellant and her husband. Thereafter, appellee twice changed the name on these billing statements, once to Susie or Stephen Green, Jr., later to Mr. Stephen Green, Jr., which remained unchanged until his death. Appellant neither requested these changes, nor was she informed of the reason for them. Neither did appellant agree, either orally or in writing, to pay for purchases made by her deceased husband, or by herself for herself or her family. The record reflects that the purchases made with the charge card by appellant were for necessaries customarily used by a family.

Appellee says that appellant owes it the balance of the account in the amount of $371.00, apparently on the theory of a joint account, and regardless of whether the charges were made by the appellant or her husband.

Appellee apparently, by its brief, wants us to conclude that inasmuch as appellant purchased $453.59 worth of goods on the account and the balance is only $371.00, she still owes for the purchases she made. Of course this reasoning excludes any consideration of the husband's purchases, or the payments made on the account for the purchases of both over the life of the account. And, there was no evidence in the record that the $371.00 was for her purchases alone.

Appellee's contentions in brief as to the theory of the case are not borne out by the record, where it is clear that the case was presented to the jury on the basis of a joint account.

Appellant contends, however, that the account was her husband's and that she was merely given a card authorizing her to make purchases on her husband's credit; and this contention is certainly borne out by the testimony of appellee's only witness to the effect that the appellee considered the account to be the husband's, that it looked to him for payment, and that the wife was merely permitted to use the account by charging to the husband's credit.

Credit cards have existed as commercial instruments for many years, but the issuance of "Bank Credit Cards" did not commence until late 1966 when member banks of the Midwest Bank Card system began to use them.

There are very few decided cases in this country on the subject, but there are numerous articles that have been written about bank credit cards. One of them will

be found in The Banking Law Journal, Vol. 85, pp. 941–977, Nov. 1968. It is therein pointed out that the usual basis of a bank credit card plan is a tripartite arrangement involving: (1) an agreement between the issuing bank (appellee here), and the cardholder (appellant here); (2) an agreement between the issuer and the merchant-seller; and (3) a sales agreement between the cardholder and the merchant-seller.

The case at bar presents an interest only in the first agreement, i. e., the issuer-cardholder agreement.

Bank credit cards have been issued on a solicited and unsolicited basis. In the case at bar the charge cards were issued to the appellant and her husband on an unsolicited basis.

This state of the facts requires us to determine what type of agreement or contract existed between appellee and appellant.

In 17 Am.Jur.2d, Contracts, Sec. 298, page 716, there is found the statement:

"Two or more parties to a contract may bind themselves jointly, severally, or jointly and severally. The intention of the contracting parties, as revealed by the language of their contract and the subject matter to which it relates, determines whether a contract is joint or several; * * *"

In the case at bar there was no contractual language either in a separate agreement or imprinted on the charge card which would be available for use in attempting to discern the intention of the parties. Therefore, we must look at the facts contained in the record to ascertain said intention. The record reveals that appellant was issued a charge card in the name of Mrs. Stephen Green, Jr., and that the first few billing statements were in the name of Mr. and Mrs. Stephen Green, Jr., and for the last year of the account's existence, it was in the name of Mr. Stephen Green, Jr. In addition to this evidence,

there was testimony from appellee's only witness that the bank intended the account to be the husband's unless some other arrangement had been made. The testimony does not reveal any other arrangement was made by appellant or her husband.

■ We would point out also that it is the law in Alabama that a husband is under a common-law liability for necessary comforts and supplies furnished the wife, notwithstanding that the wife may, by statute, enter into contracts and be sued thereon. Anderson v. W. T. Grant Co., 45 Ala. App. 105, 226 So.2d 166, and Ponder v. D. W. Morris & Bros., 152 Ala. 531, 44 So. 651.

The evidence introduced on behalf of appellee showed that the bulk of the items purchased by appellant was in the category of necessities.

Appellee's evidence is also silent on the question of whether or not appellant had agreed to be responsible for the necessaries purchased for her family.

In the case of Loveman, Joseph & Loeb, Inc. v. Rogers, 39 Ala.App. 162, 96 So.2d 691, we have a factual situation somewhat analogous to that at bar. A charge account was opened with Loveman, Joseph & Loeb, Inc. by Mrs. Margaret Rogers in the name of Mr. and Mrs. H. C. Rogers. This Mrs. Rogers made purchases from appellant and charged them to the named account. Margaret Rogers received a divorce from H. C. Rogers, and he later married Mrs. Marguirite Rogers. The second Mrs. Rogers used this charge account, and a question subsequently arose as to who was liable for the purchases of the second Mrs. Rogers, who was also now divorced from Mr. Rogers—she or her former husband, H. C. Rogers? The material facts upon which the court relied, showed that the second Mrs. Rogers did not open the account and made no express promise to pay for any part of the unpaid balance of the account; all of the purchases involved in the suit were made either by the

second Mrs. Rogers, or with her authority, while the parties were married; and the bills were sent out in the name of Mr. and Mrs. H. C. Rogers.

The material facts in the case at bar bearing on the relationship between appellee and appellant are very similar to the material facts in *Rogers,* supra, leading us to the conclusion that there was no evidence indicating that the account held with appellee by appellant and her husband was a joint one.

The only piece of evidence that could possibly be construed as indicating either that appellant had a joint account, or that she had impliedly consented to be solely responsible for her purchases, was the charge card in the name of Mrs. Stephen Green, Jr.

The effect this piece of evidence had on the determination of the issue in this case appears to us to have been completely dissipated by the fact that there was only one account number, the billing statement being initially in the name of Mr. and Mrs. Stephen Green, Jr., but at the last, in Stephen Green, Jr.'s name only; plus the testimony of the bank's only witness to the effect that the account was intended to be the husband's with the wife-appellant being permitted to charge on it.

We think this observation especially pertinent when we compare the account in *Rogers,* supra, where it was styled Mr. and Mrs. H. C. Rogers, with the account in the present case being styled Mr. and Mrs. Stephen Green, Jr.; and consider the court's conclusion in *Rogers,* supra, to the effect that the account was the husband's only, with the wife not being responsible for the charges. The court, in the cited case, also neutralized any conclusion that the use of the term Mr. and Mrs. would mean that a joint account existed in the present case.

The Supreme Court in Chichester v. First Nat. Bank of Birmingham, 242 Ala. 227, 5 So.2d 772, quotes, with approval, the following from Harris v. State, 215 Ala. 56, 109 So. 291:

> "When the party holding the burden of proof wholly fails to adduce evidence to support the cause of action or defense, or where the testimony of one's own witnesses, without conflict, makes out the case of the opposing side, the court may direct the verdict by affirmative instruction without hypothesis on request in writing. In such case there is nothing to argue. The party may not assail the credibility of his own witnesses in argument."

Also see Stowers v. Dwight Mfg. Co., 202 Ala. 252, 80 So. 90.

■ It is our conclusion that the evidence in this case fails to show that appellant's account at appellee's bank was a joint one with her deceased husband.

We are therefore of the opinion that the trial court erred in refusing to give to the jury the general affirmative charge without hypothesis as requested in writing by the appellant.

We will now consider the other assignments of error made by appellant.

Assignments of error two and twelve will not be discussed for the reason that our conclusion in regards to the refusal of the trial court to give the general affirmative charge without hypothesis obviates any worthwhile purpose in so doing.

■ Assignment of error five is based on the refusal of the trial court to give the following charge to the jury:

> "I charge the jury that under the laws of Alabama a wife is not liable for the debts of her husband."

The court, in its oral charge, read to the jury Title 34, Section 65, Code of Alabama 1940, as Recompiled 1958, which appellant, in brief, admits is the basis of this written requested charge.

The appellate courts of this State have repeatedly held that the trial court will not be put in error for refusing to give at the request of a party, charges where the principle of law sought to be stated is given to the jury in the court's oral charge or in other given written charges. Title 7, Section 723, Code of Alabama 1940, as Recompiled 1958; Cullman-Jefferson Counties Gas Dist. v. Reeves, 281 Ala. 67, 199 So.2d 78; Atlantic Coast Line R. Co. v. Griffith, 40 Ala.App. 364, 113 So.2d 788.

■ Assignment of error six charges the husband with being liable for necessaries, and that the wife is not liable unless she personally contracted to pay them; assignment of error seven charges that there is a presumption that the wife acts as his agent when she buys necessaries.

We consider that the trial court properly refused these two requested charges.

These two requested charges were not hypothesized on the evidence, but merely set out statements of legal principles without instructions as to the effect on the issues in the case. McLaughlin v. Tolbert, 273 Ala. 307, 139 So.2d 610; and Atlantic Coast Line R. Co. v. Griffith, supra.

■ Also, the charge in assignment seven was properly refused for the reason that Alabama does not presume that the wife is the agent of her husband merely because she buys necessaries. Goldfield v. Brewbaker Motors, Inc., 36 Ala.App. 152, 54 So.2d 797.

For the failure of the trial court to give to the jury the general affirmative charge without hypothesis as requested in writing by the appellant, this case is reversed and rendered.

Reversed and rendered.

## ON REHEARING

In its application for rehearing, appellee contends that: (1) the sales receipts signed by appellant in making purchases with her charge card were negotiable instruments and that she is liable for those purchases even though they were for necessaries; and (2) where a wife executes a negotiable instrument, it then becomes a question of fact for the jury whether she is liable on the instrument, regardless of the fact that it may have been executed for the purchase of necessaries.

We would point out that appellee's complaint was in the Code form for a suit on an account (Title 7, Section 223, Form 10, Code of Alabama 1940, as Recompiled 1958); the case was tried before a jury on the basis of a suit on an account, and was reviewed by this court on appeal on that same theory.

Yet, on rehearing, appellee now characterizes the case as premised on a negotiable instruments theory.

New questions or new theories for deciding a controversy cannot be presented or raised for the first time on rehearing.

The Supreme Court in Kirkland v. Kirkland, 281 Ala. 42, 198 So.2d 771, said:

"We cannot sanction the practice of bringing up new questions for the first time in application for rehearing. Robinson v. Allison, 97 Ala. 596, 604, 12 So. 382, 604 (sic).

"An application for rehearing on ground not argued or suggested until after our judgment was rendered cannot be now considered. Goodgame v. Dawson, 242 Ala. 499, 504, 7 So.2d 77; Rudolph v. Rudolph, 251 Ala. 317, 319, 36 So.2d 902; Austin v. Pepperman, 278 Ala. 551, 572, 179 So.2d 299."

■ This court is thereby precluded from considering the questions raised in the application for rehearing.

We would say again, however, that this case was not tried and decided on the basis of a negotiable instrument, but went to the jury on the basis that there was a joint ac-

count with appellee, appellant and her husband, for which she was to be held liable.

There was never any effort to characterize the sales slip or charge ticket signed by appellant as a negotiable instrument. Moreover, had the controversy been tried and decided on the basis of a negotiable instrument rather than an account authorized by Section 223, supra, the appellant could have been held liable only for those charges made by her.

Section 3–401 of the Uniform Commercial Code (Title 7–A, § 3–401, Code of Alabama 1940, as Recompiled 1958), provides:

"No person is liable on any instrument unless his signature appears thereon."

Therefore, the question would have been one of law rather than fact. Hence, no jury question would have been involved.

Opinion extended.

Application for rehearing overruled.