MOORE, Executor v. DUDLEY and WIFE.

1. In construing wills, the intention of the testator must govern, and it is to be ascertained, when doubtful, from a full view of the entire instrument; all its parts are to be reconciled if possible, and if not, the latter provisions are to govern.

2. B bequeathed to his daughters, S. and A. each eight negroes, which they then possessed; and to his other daughters, each, a lot of negroes equal in value to those given to S. and A. to be allotted them when they respectively married or came of age. Held, that the valuation was to be according to age, number, comeliness, &c. of the negroes, and not to the fluctuating or casual money value, at the time the younger daughters should become entitled.

PULASKI DUDLEY, for himself and Susan, his wife, in right of his wife, filed a petition in the County Court of Madison county, in March, 1825, against William Moore, who was the executor of Uriah Bass, deceased, claiming a further allowance to the value of $1,515, for a deficiency in a distribution of the negroes of said estate, made to him under the will of said Bass, and for the hire of the slaves he should have received as he alleged.

The controversy arose on the construction of the will, and on that part of it only, which related to the disposition of the negroes of the estate: it contained sundry devises and bequests, concerning which there was no difficulty.

The material facts appear to be these. Bass made his will in 1819, and shortly afterwards, died. By it, he bequeathed to his married daughters, Sarah Green and Ann Green, among other things, to each, a lot of eight negroes, which he said they had received from him. The will afterwards contains these words: "I give and bequeath unto my daughters, Elizabeth, Susan, Mary, Louisa, and Julia, each of them two quarter sections of land, to be purchased at the discretion of my executors, not to exceed eleven dollars per acre, on an average; also a lot of negroes to each of them, equal in value to the lots given to my daughters Sarah Green and Ann Green's lots, immediately after my death. It is my will and desire as my daughters marry or come of age, that their lots of negroes should be valued and laid off to them by my executors." Other small articles were bequeathed to each of these daughters. Provisions are also contained in the will for each of the testator's sons, Richard, William, and Uriah; and besides other things, it contains a bequest to each of them in these words: "also his proportionable part of the negroes not

already given away." It also directs that both sons and daughters should be well educated out of the surplus of the estate, and the residue, if any, to be equally divided between the sons.   The will speaks of executors, but Moore alone was nominated.

At the death of the testator, Moore, the executor, proceeded to value the negroes of Sarah and Ann, and estimated each lot at about $3,900, having reference to the market price or current value at that time.   In February, 1824, Susan, one of the daughters, intermarried with Dudley, the petitioner.   The negroes being hired out at that time, as soon as the time of hiring expired, in January following, the executor, with the assistance of two other persons, proceeded to set apart for the petitioners, a lot of eight negroes, corresponding in age, size, comeliness, and capacity, to the lots which had been assigned to each of the elder daughters.   The petitioners objected to receiving this lot as full satisfaction, but took them as part, saying they were not worth as much as such negroes were at the time the other negroes were valued. They also on their part, caused the negroes received, to be valued by three persons chosen by them for the purpose, who valued them at the current price at the time when received, at $2,435, leaving a deficit of $1,515, less than the valuation of the former legacies.

Moore, the executor, was served with process, but did not answer; upon which the County Court, in November, 1825, after a full consideration of the matter, decreed that additional negroes should be set apart for the petitioners, to the value of $1,515; that the executor should account to them for the hire he had received for those additional negroes, from February, 1824, till delivered to the petitioners, and that he pay the costs.

Moore, the executor, sued a writ of error to this Court, and assigns the following as grounds for reversal:

1. That the County Court had no jurisdiction of the matter.

2. The decree should have been in favor of the appellant.

3.   That the decree is erroneous in not having required of the petitioner, a refunding bond.

4.   That there was error in decreeing hire, without ascertaining the amount.

HOPKINS, for the plaintiff in error.

KELLY & HUTCHISON, CRAIGHEAD and THORNTON, for the defendants.

By JUDGE SAFFOLD. In my view of the subject, the second cause assigned will dispose of the whole case, and dispense with any examination of the other exceptions taken. Whether the judgment or decree of the Court should have been for the plaintiff or defendant, depends on the legitimate and equitable construction of the item of bequests, and the influence that the other parts of the will which have been noticed can have upon it.

The question is, did the testator intend that his unmarried daughters should each receive lots of negroes equal in permanent or intrinsic value, and in themselves every way comparable to the portions of their elder sisters? or did he intend that they should receive allotments, which at the subsequent and distinct periods at which they might severally marry, or attain full age, should be valued, according to the then true market price, at the same sum that the other lots were estimated at, nearly five years previously.

It is to be observed, that the defendant does not charge, nor did the County Court assume the position, that the negroes allotted to him and wife, were not of themselves in all respects equal to those composing the former lots, by which they were to be governed; but it is charged that during the intermediate time, there had been a great depreciation in the market value of such property, so that negroes of the same description would at the latter period command in market but litte exceeding one half what they would have done at the former. By this rule, nearly twice the number of negroes, equal in quality and permanent value, would be necessary to satisfy this, than composed the former legacies, by which it is to be regulated. And as the five younger daughters must necessarily claim their several portions at different periods, covering probably a space of ten years or more, there might be from the same cause, equal disproportion, in the number and quality of negroes necessary to complete their respective. lots.

The counsel for the defendant urges with some plausibility, as a reason why distribution should be made on the principles adopted by the Court below, that supposing each legatee to have sold the negroes, the elder, soon after the death of the testator, and the latter at the time his was allotted, they would have been equal in the amount of money. This is admitted; yet the reflection naturally occurs, that sales at these particular junctures were the only means by which they could have resulted equally, as the

price of negroes fluctuates with nearly the same rapidity as any other description of property, even the staple commodity of the country.    Also, that the legacies were obviously intended to be in property, in preference to money; otherwise it is a reasonable conclusion that the negroes would have been directed to be sold by the executor, as the more usual and practicable mode of equalising the pecuniary legacies.   Let us also suppose, instead of a depreciation in the price of negroes during the time mentioned, an equal advance had happened.   In that casual event, in lieu of perhaps twelve negroes that the defendant now claims, he would only have been entitled, on the principles of his argument, to about five of the same quality or description. Then suppose at the time of this latter allotment, his negroes, and the lots of the elder sisters had been sold together, or at the same rates, how would the equality of the legacies have stood.

JULY 1829.

Moore, Ex'r.
v.
Dudley and
Wife.

The idea of a contemplated sale of the negroes is further excluded, from the consideration that they are a kind of property easily transferable to whatever place desired. There is usually some attachment for negroes raised or long used in a family, and the sale of such property by legatees is often distressing to their relatives and friends, and indicative of embarrassment.   And though circumstances may justify the sale, and it may be for a different cause, and with different effects, such cannot be presumed to have been the testator's intention.

It may also be safely assumed, the testator intended to make these legacies as equal as practicable, by division; for otherwise, and according to the rule contended for by the defendant, he left it altogether uncertain which should have the advantage.    It would depend alone on the contingent state of the negro market when either daughter might marry, or attain full age.    The consequence would be, that one might speculate handsonely on her brothers and sisters, by the temptation to favor a match at a time of extreme depression, as in 1824; while another, at a different period, might be compelled to postpone an acceptable offer, or yield her claim to four or five negroes, because the times should exhibit the delusive appearance of prosperity, as in 1819.

But speculative remarks aside, the principle is well settled, that in the construction of wills, the intention of the testator must govern, and that this is to be ascertained when doubtful, from a full view of the entire instrument;

that the whole must be reconciled, if possible, and if not, the preference is to be given to the latter provisions. Then, on the language of the bequest, that the testator gave to each of his five younger daughters, a lot of negroes *equal in value* to the lots given to his daughters Sarah and Ann; and that his executor should value the two lots immediately after his death; and as his other daughters should respectively marry or come of age, the same person should value and lay off to each of them their several lots, my interpretation of that item alone would be, that he intended each of his daughters should receive a lot of negroes of equal relative value, with reference to those essential qualities which render them useful and profitable. And that this is the only equitable and rational construction from the inherent nature of the subject.

It also appears to me that this construction is strongly corroborated by a subsequent part of the will; I allude to the provision which declares that each of the sons shall receive "his proportionable part of the negroes not already given away:" It is certain the testator intended each of his sons as well as daughters should receive a portion of his negro property, and we cannot presume his stock to have been inexhaustible. The principle contended for by the defendant might disappoint this intention, by consuming the negro property in completing the legacies to the daughters, and I think it a rational and natural conclusion from the various provisions of the will, that the whole estate, after defraying the incidental expenses, was only sufficient to allow each of the eight younger children legacies of about the same value with those to the married daughters, when estimated with reference to the same standard of price. If then because of a subsequent, casual, and fluctuating change in the state of the market, some of the legacies are to be increased one third, or one half, in quality or quantity of property, the consequence must be that the sons, and perhaps one of the daughters, would be entirely excluded.

The lots of negroes to the sons may have been intended to be different from the allotments to the daughters; and this may have proceeded from a difference in their real estate, or in the expense of their education; or it may have been unavoidable from the impossibility of determining the precise value or condition of the estate. Had the several allotments been directed to be made in any commodity usually raised or prepared for market; or any article,

the value of which mainly depends on the facility with which it is converted into money, I think they would stand upon a different principle, and in such case the position contended for by the defendant would be sustainable. But such a bequest has been seldom made, for the reason that when money is the object, it is preferred that the executor be directed to make sale of the articles and distribute the proceeds.

In this opinion the court are not unanimous, but a majority concur. Let the judgment be reversed.