[Civil No. 2972. Filed January 12, 1931.]

[294 Pac. 831.]

EDNA W. HILL, as Executrix of the Will of GEORGE R. HILL, Deceased, Appellant, v. ROULAND W. HILL, GEORGE M. HILL, MARTHA R. HILL, GOLDIE JONES, as Guardian of the Estate of MARTHA R. HILL, a Minor, and GOLDIE JONES, Appellees.

Messrs. Baker & Whitney, for Appellant.

Messrs. Rice & Mathews, for Appellees.

LOCKWOOD, J.—This is an action under the Declaratory Judgment Act (Laws 1927, chap. 10), seeking for the construction of a certain will. The facts necessary for the determination of the case may be stated as follows: George R. Hill, hereinafter called deceased, for more than twenty-five years

prior to his death was a lawyer, actively engaged in the practice of law in Arizona. In September, 1900, he was married to Goldie Jones, one of the defendants herein, and they lived together as husband and wife until September, 1922, when they were divorced by the superior court of Gila county. Defendants Rouland W. Hill, George M. Hill, and Martha R. Hill were the issue of such marriage.

Prior to the divorce, deceased had conveyed a life interest in his share of the community realty to his then wife. By the terms of the agreement of conveyance, she was to care for the property and maintain the improvements thereon, aid in the maintenance of the children of the marriage, and also pay off all debts and obligations then existing upon the property. At the termination of the life estate, the reversion went to deceased and his heirs.

Subsequent to the divorce, both parties remarried, deceased marrying plaintiff, Edna W. Hill, and his former wife marrying a Mr. Jones. After the marriage of deceased and plaintiff, the former made a holographic will which, after making plaintiff his executrix and residuary legatee, reads, so far as is necessary for the purposes of this case, as follows:

"Thirdly: I direct that *my debts and expenses* shall be charged to and paid from all my one half interest in that certain real estate at Globe now held as a life estate by Mrs. Goldie Hill, my former wife; and the remainder of such property I give devise and bequeath unto my beloved children Rouland, George and Martha, share and share alike, subject however to Mrs. Hill's life estate therein.

"Fourthly: If after my death Mrs. Goldie Hill aforesaid should continue in possession of said property then my debts and last expenses shall be paid out of any available funds or property of my estate but the *sum so expended* shall remain a charge against said property so held by Mrs. Goldie Hill aforesaid and my executor shall be reimbursed before a dis-

tribution of said property to my children as afore-said shall be made." (Italics ours.)

At the time of the execution of the will in January, 1923, deceased owned no realty except his reversion, as above stated, and comparatively little personal property, nor were his debts, aside from the indebtedness on the life interest which had been assumed by his former wife, of any great amount. After the execution of the will, deceased purchased certain realty in Maricopa county, one parcel of which at the time of his death was encumbered with a mortgage, and the other had upon it a lien for a large percentage of the unpaid purchase price, and had also acquired considerable personal property. Claims aggregating $4,697.79 were filed for probate and allowed in the superior court of Maricopa county. There were also various alleged expenses of administration paid by plaintiff as executrix out of the personal property of the estate, most of which were items arising out of the realty mortgage and contract aforesaid, or for legal services. These items were all approved by plaintiff as executrix and allowed by the court.

The first question which we must determine is whether or not the words "debts and expenses" set forth in the third clause of the will above quoted cover *all* the debts of the deceased, of every nature, as they existed at his death, and the expenses of the last illness, funeral, and administration, or only the debts which existed at the time of the execution of the will.

In passing upon this question, there are certain general and well-recognized principles of law which we must apply thereto: (1) A will operates upon the situation as it exists at the time of the death of the testator. 40 Cyc. 1424, and notes. (2) The meaning of a will is to be construed in accordance with the apparent intention of the testator at the time it was

executed. 40 Cyc. 1425, and notes. (3) Parol evidence is not admissible to alter or contradict the plain terms of the will, but, if the terms be ambiguous, parol evidence may be resorted to to determine the meaning. 40 Cyc. 1427–1429, and notes. With these principles before us, let us apply them to the terms of the will in question.

Is the will free from ambiguity? We are of the opinion its terms are clear and precise in their meaning, and that no parol evidence is necessary to assist the court in determining the intention of the testator. Deceased was a lawyer of many years standing, and one of the leaders of the Arizona bar. He doubtless knew that his will would not take effect until his death, and must be presumed to have contemplated that it would affect the situation as it existed at such time, and not at that of the making of the will. We think, therefore, that when he used the words "my debts" it is clear that he was contemplating debts existing at the time of his death, and not those which existed at the making of the will.

Further, we are of the opinion that the phrase "my debts and expenses" meant *all* debts and expenses, and not merely a part thereof. Had he wished to limit them to certain specific items, it is but natural to assume he would have indicated which ones he referred to. The words "my property," when used in wills, is held to refer to *all* the property of the testator, either at the time of making the will or at the time of his death, and not to certain specific portions thereof. *Pearson* v. *Housel,* 17 Johns. (N. Y.) 281. We think the same rule should apply to the words "my debts and expenses." This is confirmed by the fact that deceased was a lawyer, and was doubtless familiar with the language of our statutes in regard to the estates of decedents. Constantly throughout the statutes the phrase "debts and expenses" is used, and by "debts" is generally meant

the liabilities incurred by the deceased during his lifetime, and by "expenses" the liabilities which attach as a matter of law to his estate as a result of settling the estate and paying the expenses incident to the last illness and death. We are of the opinion that these were clearly the things which deceased had in mind at the time of the making of his will, to wit, that the word "debts" should include all the obligations which were incurred by him and in existence at the time of his death, and the word "expenses" should include all expenses of the last illness and administration of the estate.

Such being the clear meaning of the testator at the time of making his will, all the items rejected by the trial court should have been allowed as charges against the reversion of the Globe property, including the liens on the Maricopa county realty, for it is the rule that, in the absence of an express provision in a will to the contrary, any mortgage indebtedness or indebtedness on a contract for purchase of realty is as much a debt of the estate, and payable out of the personal assets rather than out of the proceeds of the particular property encumbered as any other debt. 40 Cyc. 2063; *Appeal of Fenstermacher,* 174 Pa. 476, 34 Atl. 120. The executrix was bound to pay all these debts out of the general assets of the estate, and by the express terms of the fourth clause of the will she is entitled to a reimbursement therefor when the reversion of the Globe property falls in, before a distribution of such property to deceased's children under the terms of the will.

The remaining question is whether or not she is entitled to interest upon such payment, or merely to the principal sum thereof. In passing upon this question, we are of the opinion that counsel for plaintiff have failed to realize the essential nature of the right of the executrix to reimbursement. Their argument is based on the theory that this is a claim against

the estate, and, were it a claim in the ordinary sense of the term, the cases of *In re Glenn's Estate,* 74 Cal. 567, 16 Pac. 396, *Estate of Olvera,* 70 Cal. 184, 11 Pac. 624, and *In re Cummins' Estate,* 143 Cal. 525, 77 Pac. 479, would be of much weight. It is apparent, however, upon analysis, that, instead of being an ordinary claim of a third person, payable as a matter of right from the general estate, the reimbursement of the executrix provided by the fourth clause of the will is in substance and effect a legacy to plaintiff. It is the same as though the deceased, knowing that his debts would amount to $6,000, and that under the ordinary rules of law they would be paid out of his personal estate, thus decreasing the interest of the residuary legatee, had expressly provided that a legacy in that amount be charged against his reversion in the Globe realty in favor of such legatee. Had such been the express provision of the will, there would be no contention that interest was due on the legacy before the reversion fell in, unless the will expressly provided for it. But this is, in substance, the meaning of the fourth clause of the will. We are of the opinion under such circumstances the rule in regard to interest on claims of third parties against the estate is not applicable, and that the question must be determined entirely from the terms of the will itself. What does it say?

The exact language of the will is, *"the sum so expended* shall remain a charge against said property," not, "the sum so expended, *with legal interest,* shall remain a charge against said property." Had deceased desired that his legacy should bear interest, he could have said so, but he did not, and we cannot add to his language. It is urged that the will shows a natural and laudable desire to guard the interest of his wife. This is true, but it also shows a desire that his children should be protected. The presumption in favor of one is as strong as that in favor of

the other, and we are therefore brought again to the plain language of the will, which, as we have stated, does not include interest.

We are of the opinion, therefore, that the amount of the debts and expenses paid out of the available funds of the estate, to use the language of the deceased himself, "remains a charge" against the reversion of the life interest in the Globe property, without interest, until such time as the reversion falls in, and that such sum shall then be paid from the proceeds of the reversion, and the remainder of such reversion, if any, be distributed to the children of deceased in accordance with the terms of the will.

The judgment of the superior court of Gila county is reversed and the case remanded, with instructions to enter a declaratory judgment in accordance with the terms of this opinion.

McALISTER, C. J., and ROSS, J., concur.