179 So.2d 299

**Burton F. AUSTIN**

v.

**J. Ed PEPPERMAN et al.**

**John C. GODBOLD, as Guardian Ad Litem, et al.**

v.

**J. Ed PEPPERMAN et al.**

3 Div. 21, 21–A.

Supreme Court of Alabama.

June 3, 1965.

Rehearing Denied Oct. 21, 1965.

Rufus M. King, Capell, Howard & Cobbs and Walter J. Knabe, Montgomery, for appellant Austin.

L. Lister Hill and Godbold, Hobbs & Copeland, Montgomery, for Godbold, as guardian ad litem and others as cross-appellants.

Richard A. Ball, Montgomery, for appellee Pepperman.

David W. Crosland, Montgomery, guardian ad litem for minor appellees.

COLEMAN, Justice.

The husband of testatrix appeals from a decree construing the will adversely to the husband.

The guardian ad litem for certain minor beneficiaries under the will also appealed and has undertaken to cross-assign errors.

The reporter will set out pertinent provisions of the will and two codicils.

Testatrix died January 28, 1959. The will and first codicil were admitted to probate and J. Ed Pepperman was appointed executor March 6, 1959.

On June 2, 1959, executor filed petition to probate the second codicil, which was admitted to probate June 8, 1959.

Testatrix left an estate which included two parcels of realty consisting of her homeplace of about 17 acres on Woodley Road, herein sometimes called the Woodley property, and a house and lot on Adams Avenue. Each of the two parcels was subject to a separate mortgage. Cash and insurance amounted to $2,354.11. The other personal property does not appear to be of significance.

The executor, on April 19, 1960, filed a petition praying for removal of administration to circuit court. Removal was ordered April 25, 1960.

On June 20, 1960, executor filed a petition for instructions as to the proper construction of the will and codicils. Among other things, the petition recites:

"Petitioner respectfully represents to the Court that it is necessary to sell all or a part of this real estate for the purpose of paying said debts. . . . . ."

On August 5, 1960, the court rendered a decree authorizing executor to determine what part of property should be sold and to advise the court thereof.

On March 2, 1961, executor filed petition, advising that the Woodley property be sold and that he had an offer of $58,500.00, less commission of $1,500.00, for this property. The executor attached to this petition a paper signed by the executor, the husband, and three blood members of family of testatrix other than the executor, whereby the signers agreed to the sale of "any and all property" of testatrix as provided in the will. This agreement is dated: ". . . . this ———— day of April, 1959."

The court approved the sale and the Woodley property was sold. The separate mortgage on this property was assumed by the purchaser and, out of proceeds of sale, executor paid debts and claims against the estate. We understand that a balance of approximately $19,000.00 remains in the hands of executor for payment of legacies and costs of administration.

Various beneficiaries under the will assert their several claims to the undistributed balance. The court rendered a decree construing the will and declaring rights of parties. On rehearing, certain parts of the decree were changed.

The errors insisted on are that the court erred in certain parts of the last two decrees.

*On Appeal.*

The court noted in its decree that, under the original will, the husband was given the privilege of living on the Woodley property, subject to. certain conditions; that, under the first codicil, reference is made to payment to the husband of a sum equal to all payments made by him on a mortgage on the Woodley property in event it is sold and the husband is not provided a home for his lifetime; that the property had been sold under order of court; that remainder of proceeds of sale were held subject to further order of the court; and that "The Court finds that said Bert Austin has failed to comply with the conditions and requirements placed on his selection of a homeplace from said Woodley Road property. He has made no selection but instead bought a home elsewhere and after remarriage has occupied it with his present wife. He has failed to insure, repair, and pay taxes on any of said Woodley Road property and has not continued to occupy said Woodley Road property. Temporarily he managed the Woodley Road property, then turned over the same to a real estate agent and settled his management account with said read estate agent. The Court finds that said Bert F. Austin has no right to reimbursement, and if he ever had such right has waived the same."

The husband insists that the court erred in denying him reimbursement for mortgage payments he had made. It appears undisputed that the husband had paid $14,432.40 on the mortgage on Woodley property.

Appellees are divided into two opposing forces on certain items in the decrees, but all appellees, except executor who remains neutral here, unite in support of the decree denying payment to the husband.

In paragraph 2, testatrix provided:

"2. It is my desire that my . . . husband . . . . shall have a home on property . . . . on Woodley Road, during his lifetime, and that my brother, . . . . his wife and

children, and my daughter-in-law, . . . . and her children by my son . . . . should have a place where they can visit on said property so long as they shall live. . . . . .

"(a) My husband, Bert Austin, shall have the privilege of living in any one of the four houses now on the said property according to his choice, so long as he shall live, except that he shall not be permitted to use the . . . . garage apartment, in the event that part . . . . is being occupied by my daughter-in-law . . . . at the time of my death. He may select any one of the houses . . . . Once he has made his selection he shall continue to occupy that house, except that in the event that he selects the house we are now using as our home and then in the further event that he remarries, he shall vacate said house and occupy any one of the other three, subject to the rights of Cornelia Sealy as to the garage apartment . . . . .

"If there is any mortgage on the property at the time of my death, I will that the mortgage shall be paid from my estate, and that my husband shall not make any further payments on it. The home which he selects shall be insured by him for the benefit of my estate, and he shall pay the premiums on this insurance and shall pay taxes for said part of the property and shall keep same in repair.

"(b) In the event my son, Ed, re-marries my daughter-in-law, Cornelia Sealy, then my son and my daughter-in-law during their marriage shall have the privilege of making their home in said house during such time as my husband is not occupying same as a home.

"(c) Regardless of who occupies the property which we are now occupying as our home, I will that such house shall at all times be kept open for visits by my daughter-in-law . . . . or any of her children by my son . . . . during such time as they are not occupying other property herein specified, and shall also be kept open for visits by my brother . . . . At any time the house which is our home is not occupied, my trustee . . . . shall keep same available for visits as above specified. At any time none of the beneficiaries is using said property, then my trustee shall have the privilege of renting same, if possible. However, my trustee shall make available said premises to my beneficiaries at any time on sixty days written notice."

In paragraph 3, testatrix gives to the daughter-in-law, Cornelia Sealy, "the privilege of occupying" the garage apartment so long as she remains unmarried or married to the son of testatrix; gives to the children of the marriage of daughter-in-law and son "a home in said garage cottage apartment so long as any of them shall live"; provides for renting the house if it becomes vacant; but provides that "one of the persons herein specified" may recover possession on giving sixty days' notice in writing. Testatrix also provided that "the property shall have with it a lot" as specified, said "lot to be established" by the trustee. We note here that we have not found where the trustee established this lot.

In paragraph 4, testatrix provided that the privilege of occupying property shall be "limited to occupancy by the beneficiary" and beneficiary "shall not have the privilege of renting said property."

In paragraph 5, testatrix recognized that sale of the property left by her might become necessary or advisable, and provided for a method of approving a sale.

In paragraph 12, testatrix provided that her brother should have the privilege of selecting a lot if he should return to Montgomery to live. As we understand the record, the brother did return to Mont-

gomery to live, but did not select a lot prior to the sale. In the final decree, the court said:

"6. Under Item 12 of the original will J. Ed Pepperman, brother of the testatrix, was granted the privilege of selecting a lot from the Woodley Road property. Since the real estate from which the lot was to have been selected was sold for payment of debts of the estate the Court finds that in lieu of said lot said J. Ed Pepperman is entitled to the sum of $2,100 which under the testimony would have been the value of the lot he was authorized to select, said sum to be subject to claims and debts of the estate in the same manner as the lot would have been."

In the decree on rehearing, the court directed the register to pay to the brother "individually the sum of $2,100.00." The parties do not argue that this award to the brother was error.

By the first codicil, testatrix provided that in the event the Woodley property, ". . . . or any part of it, is sold and by such sale my husband, Bert Austin, is not provided a home for his lifetime, then out of the proceeds of such sale he shall be paid a sum . . . ."

There were four houses on the Woodley property, to wit: the big or main house occupied by testatrix and husband, the garage apartment occupied by the daughter-in-law, a stucco building, and a frame house. The daughter-in-law testified that, during the two months following the death of testatrix, the stucco house was occupied by "somebody else," who, as we understand, was a tenant. The frame house was similarly occupied during those two months.

Husband testified that after the death of testatrix, he continued to live in the main house until he married again about April 10, 1959. Seven or eight days later he moved his furniture and personal effects from the house. He has not resided on the Woodley property since. He did not pay any taxes, insurance, or repairs on the Woodley property. He managed it until about June, 1959, when a real estate company took over the management.

After the husband remarried and moved out of the main house, he made no demand for either of the other houses. He lived for a time in an apartment and later bought a house on Hull Street.

From the quoted provisions of the will and codicil and the testimony as outlined, the rights of the husband must be determined. There appears to be no material dispute in the testimony. We do not understand that any party insists there is such dispute.

The husband contends that, by the will and first codicil, testatrix intended that he be reimbursed in event the Woodley property should be sold as has been done under the existing circumstances, that his right to payment is not barred or forfeited by any action or inaction on his part, and that the court should order payment to him as provided in the first codicil.

Opposing appellees contend that the court correctly denied payment to the husband because the will and codicil imposed a condition precedent on husband's right to payment and the husband has not performed the condition. Appellees say that testatrix intended that before the husband could have a right to live in one of the houses, he was required to make a choice or selection of a house; that he made no such choice, and, therefore, had no right to live in a house; that, since he had no right to live in a house, he had not been deprived of such right by the sale of the Woodley property; that the codicil required, as a condition precedent to husband's right to payment, that "by such sale" the husband be not provided a home; and that, since he was deprived of a home, not as a result of the sale but as the result of his own failure to select a house, he is not entitled to be reimbursed for the mortgage payments he had made on the Woodley property.

Appellees say also that, by his actions, the husband had waived or abandoned the legacy. We do not understand that any authority is cited to support this last proposition. It may well be the rule that a beneficiary can abandon benefits given by a will, but we are of opinion that husband's conduct here does not constitute abandonment of his claim under the first codicil.

Certain well-recognized rules appear to be pertinent in deciding whether selection was a condition precedent to the husband's right to payment

■ The cardinal rule for the construction of wills is to ascertain the intention of the testator and give it effect if not prohibited by law. Betts v. Renfro, 226 Ala. 635, 639, 148 So. 406.

■ The law favors a vested rather than a contingent estate, and, where a codicil is made to a will in which is declared a deliberate purpose to change the will, the courts must observe with care the mandates of the codicil embodying the change. Betts v. Renfro, supra.

■ The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment; and this time is usually at the death of the testator. The intent to postpone the vesting of an estate must be clear, and not arise from mere inference or construction. Authorities in Betts v. Renfro, supra.

■ If futurity is annexed to the substance of a gift, it is contingent; if merely annexed thereto as the time of payment, enjoyment, or delivery of possession, it is vested. Betts v. Renfro, supra.

■ Where an estate or interest is given in one clause of a will in clear and decisive terms, the interest cannot be taken away or diminished by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate. Authorities cited in Sewell v. Byars, 271 Ala. 148, 150, 122 So. 2d 398.

■ The generally accepted rule is that conditions precedent are not to be excused of performance, for the courts must observe care that they not make a new will for the testator. Watters v. First National Bank of Mobile, 233 Ala. 227, 237, 171 So. 280.

"In this jurisdiction the creation of conditional estates, while recognized, is not favored; and it has been held here that the creation of a conditional estate by deed or devise will not be pronounced unless the 'intent of the grantor to make a conditional estate is * * * clearly and unequivocally indicated.' Zimmerman [Mfg. Co.] v. Daffin, 149 Ala. 380, 388, 42 South. 858, 861 (9 L.R.A. [N.S.] 663, 123 Am.St.Rep. 58); Hitt Lumber Co. v. Cullman Coal Co., 200 Ala. 415, 416, 417, 76 South. 347. In all cases where it is doubtful 'whether a clause in a deed imports a condition or a covenant, the latter construction will be adopted.' Zimmerman [Mfg. Co.] v. Daffin, supra; Elyton Land Co. v. [South & North Alabama] R.R. Co., 100 Ala. 396, 405, 406, 14 South. 207, among others. However, if from the language of the instrument the intention to create a conditional estate is clear and unequivocal, effect must be accorded that express purpose, unless to do so offends positive law or public policy. Hitt Lumber Co. v. Cullman Coal Co., supra. * * * " Libby v. Winston, 207 Ala. 681, 683, 93 So. 631, 632.

■ It is also a general rule that if an estate be given on a condition, for the performance of which no time is limited, the devisee has his life for performance. Finlay v. King's Lessee, 3 Pet. 346, 28 U.S. 346, 7 L.Ed. 701.

If she had wished to do so, testatrix could have limited husband's right to reimburse-

ment for the mortgage payments to the condition that he must have selected one of the houses for a home prior to the sale of the Woodley property. There are, however, no words expressly creating such a condition. Did she create such a condition by words which must be given that effect?

In the first sentence of paragraph 2, testatrix expresses her desire that husband shall have a home "during his lifetime." In paragraph 2(a), testatrix states her will to be that the husband shall have the privilege of living in one of the four houses "so long as he shall live." In the first codicil, testatrix says that in the event the Woodley property is sold, and by such sale the husband is not provided a home "for his lifetime," he shall be paid. Three times in will and codicil testatrix uses words which expressly state that, whatever interest or estate she gives to the husband in a house on the Woodley property, the interest given is to last throughout the husband's lifetime and will not end until his death.

Testatrix does not say that the husband's interest shall end if he moves off the property. The codicil does not say that husband is not to be paid if he was not living on the property at the time of sale or had not selected one of the three smaller houses.

Paragraph 2(c) requires that the main house, home of testatrix, be kept open for certain purposes at all times, and, at any time none of the beneficiaries is using "said property," the trustee may rent it. Testatrix seems to have intended that any occupant of the main house might go from it without losing the privilege of returning. Paragraph 2(b) suggests the same intent.

Did testatrix express a different intent as to the other three houses? In paragraph 3, testatrix gives daughter-in-law privilege of occupying garage apartment as long as she remains unmarried or married to the son of testatrix. If the garage apartment becomes vacant, however, trustee may rent it, subject to right of "one of the persons herein specified" to receive possession after sixty days' written notice. Who is in-

cluded among the persons specified is not stated. It could reasonably include the husband because in paragraph 2(a) testatrix says husband "shall not be permitted to use" the garage apartment if it be occupied by daughter-in-law "at the time of my death." This seems to imply that husband would have the right to select it if it were not occupied by daughter-in-law at time of testatrix's death.

At death of testatrix, husband continued to live in the main house. To that extent, certainly, he made one selection. On remarriage he lost the right to occupy the main house. He never selected another house. Did he, by failing to select before the sale, lose the right to select another house and also the right to payment? The first codicil does not so state. That codicil is the place, and the only place where husband's right to payment is mentioned. Does its language, read in connection with the whole will, clearly and unequivocally indicate the intent of testatrix to make a conditional estate or interest in the husband? Libby v. Winston, supra.

Appellees say that: "It is important to note that appellant must, in the language of the codicil, be deprived of his home 'by such sale'. In fact appellant was 'not provided a home' not by the sale of the property but by his own failure to take a home."

It will be noted that, in the first codicil, testatrix says that if "the property . . . . or any part of it," is sold. She contemplated two kinds of sale, a sale of all and a sale of part. The phrase, "by such sale," may reasonably be taken to mean the sale of part on which husband was living. If part were sold and husband were not living on the part sold but was living on another part, he would not be deprived of a home by such sale. If he was living on the part sold, however, he would be deprived of a home by such sale and be entitled to payment. The will and codicil, considered as a whole, do not, in our judgment, clearly and unequivocally create a conditional estate and selection of one of the three smaller houses

by the husband was not a condition precedent to the husband's right to be paid the sum he had paid on the mortgage.

Did the testatrix intend for the gift of payment to the husband to fail if he failed to select before sale of the land? She did not expressly say so. The gift of payment does not come into being except the land be sold. The right to select came to husband at death of testatrix. No limit is set on the time within which he was bound to select. The husband had his life for performance even if selection be considered a condition to payment, which we do not think selection was. Did testatrix intend that the husband's right to select and, therefore, his right to payment be destroyed by the very occurrence which created the latter right? We think not.

We are of the view that his right to select vested on the death of testatrix, that he did select the big house, that by remarriage he did not divest himself of the right to select another house, that the right to select another house continued "for his lifetime," that when the land was sold he was deprived of the right to a home and became entitled to the right to payment.

Appellees rely on Vaughan v. Vaughan's Heirs, 30 Ala. 329. There testator gave to his widow the right *"to pick out fifteen of my best negroes, and keep possession of them during her natural life."* The widow sued for recovery of the negroes. This court held that *"the picking out of the fifteen negroes by the widow, was in the nature of a condition precedent; and if she did not pick them out before she filed her original bill, and was not prevented from picking them out, she cannot recover them or their hires in the present suit. But if . . . . during her widowhood, she did pick them out, and give notice . . . . she thereby acquired, under the will, the equitable right to their possession and hires from that time."*

We do not think Vaughan applies here. If husband were suing for possession of one of the houses, Vaughan might be apposite, but that is not the instant case. Husband is not suing for possession of one of the houses and loss of its use. Husband is claiming what testatrix said he should have if "by such sale" he were not provided a home for his lifetime.

We have noted that in paragraph 12, testatrix gave her brother "the privilege of selecting any lot which is unsold," etc., and that the brother returned to Montgomery but did not select a lot. Testatrix provided no forfeiture if brother did not select. We have not found where testatrix provided for any payment to the brother if he never selected a lot and the land were sold. Yet, the decree ordered payment to the brother in lieu of his unselected lot. We think husband also should receive payment, as expressly provided in the first codicil, in lieu of his unselected house.

 One further argument, perhaps, calls for attention. The trial court stated and appellees mention in brief, apparently as argument to support denial of payment to the husband, the fact that husband had "failed to insure, repair, and pay taxes on any of said Woodley Road property." In paragraph 2(a) testatrix provided that insurance, taxes, and repairs shall be paid for by the husband on "The home which he selects."

As we understand the evidence, there is no showing that any insurance premiums, taxes, or repairs on the main house became due and payable while the husband occupied it. If there were no necessity for payment or nothing due, it does not seem that the husband could be in default or breach of a condition by failing to pay what was not due. If he never selected another house, as was the case, he could not be in default by failing to pay for insurance, taxes, or repairs because the duty was to pay as to "The home which he selects."

The duty to pay could be, at most, a condition subsequent. The will provides no forfeiture on failure to pay for insurance, taxes, or repairs.

It is a general principle and rule that conditions subsequent are not favored in law, and must be strictly construed, because they tend to destroy estates and a vigorous exaction of them is a species of *summum jus*, and in many cases hardly reconcilable with conscience. If it is doubtful whether a clause in a deed imports a condition or a covenant, the latter construction will be adopted. C. W. Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 388, 42 So. 858, 9 L.R.A.,N.S., 663. If the meaning is doubtful as to whether a clause in a will is a condition or covenant, it will be construed as a covenant. Peck v. Drennan, 411 Ill. 31, 40, 103 N.E.2d 63; Cook v. Sink, 190 N.C. 620, 628, 130 S.E. 714.

We hold that the requirement that husband pay for insurance, taxes, and repairs on "The home which he selects" was a covenant and not a condition, and that no default has been shown.

### Cross-Appeal.

Paragraph 4 of the original decree of the trial court recited as follows:

"4. By Item 11 the testatrix set up a residuary trust for her infant granddaughters and directed that there be paid out of the residue 'all the expenses set forth in Item I.' The only expenses referred to in Item I are 'funeral expenses'. The effect is to exclude and exonerate liability of the residury trust estate for debts not included in those specifically directed to be borne by the residue—*expressio unius est exclusio alterius*. The Court is of the opinion and finds that testatrix in the first sentence of Item 11 was dealing with the subject matter of items to be paid out of the residue and that her intention was to, and that she did, limit charges against the residue to funeral expenses only. Testatrix intended the residuary trust to be substantial and if all debts fell on the residue first the trust would be nominal or disposed of completely The Court finds that the only debt, expense or charge for which the residuary trust estate is responsible is for funeral expenses of decedent."

On rehearing, the court ordered:

"2. That Section Four of said decree be stricken in its entirety and in lieu of same the following is substituted:

"*Section Four:* The Court is of the opinion and finds that it was the intention of the testatrix that all debts and claims against the estate be paid out of the residue and it is ascertained by the Court that the residuary estate is sufficient to pay all debts and claims of the estate and that, therefore, the specific and general devises and bequests whether as to personalty or to realty made by the executrix be paid in their original form or in their cash equivalent as provided herein."

The residue consists almost entirely, of the unexpended receipts from the sale of the Woodley property, to wit: $18,085.19, plus $936.51 in hands of executor. Out of these funds or out of the property specifically bequeathed and devised, executor must pay the expenses of administration, the bequest to the husband, and the awards to the granddaughters and brother in lieu of their rights in the Woodley property. If any residue remain, it goes into trust for the two granddaughters as provided in paragraph 11 of the will.

It readily appears that if paragraph 4 of the original decree be followed, the residue placed in trust for the granddaughters will be substantially larger than such residue will be if paragraph 4 of the decree on rehearing be followed. The guardian ad litem for the granddaughters has brought a cross-appeal in their behalf. Cross-appellants insist that the court erred on rehearing in striking original paragraph 4 and in ordering that debts and claims against the estate be paid out of the residue.

The granddaughters say that testatrix clearly expressed her intention that the only charges against her estate which she

intended to have paid out of residue were funeral expenses; that this intention clearly appears from the first sentence of paragraph 11 of the will when that sentence is considered in connection with paragraph 1 of the will.

The first sentence of paragraph 11 recites:

"11. I desire that out of the residue of my estate all the expenses set forth in Item 1 be paid, and bequest in item # 14." Paragraph 1, or Item 1, recites:

"1. It is my will that all my just debts, including funeral expenses, be paid by my executor hereinafter named, as soon after my death as convenient."

Granddaughters contend that testatrix, in paragraph 11, said pay out of residue only the "expenses" set forth in paragraph 1 and that the only expenses therein set forth are funeral expenses; therefore, only funeral expenses and no other charge are to be paid out of residue.

Granddaughters say that debt and expense are not the same; that expenses of last illness and funeral expenses are not debts; that funeral expenses are not debts but are a charge against decedent's estate; that a direction that all just debts and expenses be paid out of certain property means expenses incurred in settling the estate and does not signify expenses incurred by testator in his lifetime; that "my debts and expenses" may mean all debts and all expenses of last illness and of administration, Hill v. Hill, 37 Ariz. 406, 294 P. 831, but in instant case testatrix did limit expenses to be paid out of residue to those of a particular kind, namely funeral expenses; that expense in paragraph 11 means the same thing as expense in paragraph 1; that these conclusions are necessary under the rules of ejusdem generis and that the expression of one thing is the exclusion of others; that the residuary trust is elaborately and carefully drawn for benefit of granddaughters and shows a primary purpose to care for the two little girls by means of a substantial trust estate; that in paragraph 11, by referring to "expenses," testatrix excluded debts and all expenses not described in Item 1; and that by reference to expenses set forth in Item 1, testatrix excluded all expenses other than funeral expenses because that is the only kind of expense set forth in Item 1.

■ In deciding what charges shall be paid out of the residue, as in deciding other questions as to the meaning of a will, the court should ascertain and follow the intention of testatrix expressed in the will.

■ In the absence of expressed contrary intent of testator, generally, where assets of an estate are insufficient to pay debts and legacies, the loss falls (1) on the residuary, (2) then on the general legacies, and (3) then on the specific legacies and devises. Garrett v. Snowden, 226 Ala. 30, 33, 145 So. 493, 87 A.L.R. 216; Powell v. Labry, 210 Ala. 248, 250, 97 So. 707.

Does the instant will show, as granddaughters contend, an expressed intent that the loss shall not fall first on the residue? If such intent be expressed, it must be expressed in paragraphs 1 and 11.

■ In paragraph 11 testatrix says pay out of residue all expenses set forth in Item 1. Note the words of Item 1. Testatrix said "all my just debts, including funeral expenses." She did not say debts and funeral expenses, or debts and expenses. She included funeral expenses in her debts to be paid by her executor.

Note the language of paragraph 11. Testatrix says pay out of the residue "all" the expenses set forth in paragraph 1. If she intended to pay only funeral expenses, why did she use the word "all"?

From brief of counsel for the executor, we quote as follows:

"Except for the minor bequests of personal property contained in Items 6, 7, 8, 9 and 10, all of the property in the estate was willed to the two grandchildren, Candace and Cynthia.

"It is incomprehensible to this writer that there would have been any intent on the part of the testatrix that these bequests of lamps, clocks, pianos, rings, etc. should abate. These items were actually worth only a *pittance*. We submit that at this point in reading the will the grandchildren were, for all intents and purposes, the sole heirs of this testatrix. It would be completely illogical and pointless to distinguish between debts and funeral expenses at *this* point in the will, because both would actually have had to have been borne mainly by the two heirs, the grandchildren, since obviously the minor bequests of personal property would have been woefully inadequate for the payment of any substantial debt.

"We feel that it is extremely significant that at this point in the order of the will that the only real asset of the estate was the Woodley Road property. Is it reasonable to assume that the testatrix intended that the Woodley Road property would only be charged with the payment of funeral expenses and that the other minor personal items would have to bear any other debts that the estate might have?"

Guardian ad litem for the grandson argues to like effect.

One other circumstance appears. For aught that appears, testatrix may not have owned the Adams Street property at the time she made the will. If she did not, she could hardly have intended that the Adams Street property should pay the debts of the estate. If she did own that property at the time of making the will and did intend for it to pay the debts, however, what effect did the second codicil have on her intent, or, perhaps more accurately, on the expression of her intent?

▆▆ Where there is irreconcilable conflict between two clauses of a will, the latest clause must prevail as being the latest expression of testator's intention. Moore v. Dudley, 2 Stew. 170, 174.

"The testatrix having made a will, and being some years afterwards dissatisfied with it, declared in a codicil a deliberate purpose to change it, which she at once proceeded to do. This emphasizes the change, and is a caution to the courts to observe with care the mandates of the codicil embodying the change. * * *" Smith v. Smith, 157 Ala. 79, 86, 47 So. 220, 223, 25 L.R. A.,N.S., 1045.

Whatever intention testatrix may have had with respect to Adams Street property in original will, the codicil plainly expresses the intent as to her grandson that "he alone" is to receive the property, subject only to the father's failure to keep up payments.

To give effect to the contention that funeral expenses and none other be paid from residue would prevent giving effect to the intention of testatrix that grandson alone should have the Adams Street property.

One final argument noted in counsel's brief is that in paragraph 11, testatrix uses the word "desire." To desire, according to context or circumstances, may import a request, or even a command, but means ordinarily to wish for more or less earnestly. Woods v. Postal Telegraph-Cable Company, 205 Ala. 236, 240, 87 So. 681, 27 A.L.R. 834. In other places in the will testatrix used mandatory language, to wit: I will; I give, devise, and bequeath; He shall manage; the income shall be accumulated; payments shall be pro-rated; all shall go. If testatrix had intended to command that only funeral expenses be paid out of residue, she could have used language to express that intent. We do not think desire is used as a command in paragraph 11, and even if the words "all expenses" in paragraph 11 be limited to funeral expenses, the testatrix has not clearly expressed an intention to limit payment out of residue to funeral expenses.

We hold that the court did not err in ordering all debts and claims to be paid out of residue.

## Cross-Assignments.

The granddaughters argue that the court erred in finding that, by second codicil, testatrix devised to her grandson the Adams Street property, subject to mortgage thereon, with right in grandson's father to use until grandson reaches age of twenty-one years, provided that father must make all payments on said mortgage, and, if he fail so to do, the devise to the grandson shall fail.

Granddaughters contend that the second codicil was void and that Adams Street property became part of residuary estate. They contend that this is so because the words of the codicil, aided by material facts, are insufficient to show what testatrix intended; that no evidence is admissible to show what testatrix intended; that testatrix may not impose a condition which is indefinite or uncertain; and because the conditions of the codicil are too vague and uncertain to disclose the intent of testatrix, the conditions, and, indeed, the codicil itself should not be enforced.

The argument is that the requirement for the father "to keep up payments on place in event I am unable to do so," fails to disclose what payments testatrix intended, and that there are no payments which testatrix could keep up after death.

Further argument is directed to the condition that: " . . . . unless my son doesn't care to keep it for my grandson. In such event amount of sale of place will go into estate." Granddaughters say it is impossible to ascertain what the condition is.

We understand that it is undisputed that Adams Street property was subject to mortgage for about $10,000.00 at death of testatrix. It seems apparent to us, as it must have been to trial court, that the payments referred to in the codicil were the mortgage payments of $101.00 per month. If there were other "payments" due on the Adams Street property, it may be that testatrix intended those also, but the mortgage payments appear to be the only charges against this property which would ordinarily be referred to as payments. The term could include, perhaps, taxes. We doubt if it would ordinarily include the payment of income tax liens amounting to more than $17,000.00. We are of opinion that the codicil is not uncertain as to the payments to be made by the son of testatrix.

As to the vagueness of the condition, and as to what happens to the Adams Street property if the father stops making payments, that question is not presented at this time. It may well be that such a question can arise in the future and require decision; but for the question now before us, that is, whether the codicil makes a gift to the grandson, and to his father pending his minority, we are of opinion that the trial court correctly gave effect to the codicil and that the Adams Street property is not part of the residue.

Being of opinion that the cross-assignments are without merit, we pretermit consideration of motion to strike them.

## Priority.

The husband contends that the bequest to him is a demonstrative legacy because the thing or money is not specified and distinguished from all others of the same kind, but a particular fund is pointed out for its payment; that demonstrative legacies may be satisfied out of the general assets upon failure of the particular fund; and demonstrative legacies, unlike general legacies, will not abate upon the failure of the general assets but retain the right of satisfaction out of the particular fund. Myers' Executors v. Myers, 33 Ala. 85, 89. Husband contends that the demonstrative legacy to him is tantamount to a first lien on the proceeds of sale of Woodley property and payment to him takes priority over other bequests payable out of the proceeds of sale.

In the decree on rehearing, the court ordered payment of $3,493.69 to one granddaughter, $3,467.44 to the other, $2,100.00 to the brother, and $7,250.00 in fees to executor, his counsel, and guardians ad litem. These payments total more than $16,000.00. The decree recites that a total of $19,021.70

constitutes the remaining assets of the estate. We have decided that the husband is entitled to be paid $14,432.40. It is obvious that all the payments cannot be made out of the remaining money.

We are not inclined to deny that the first codicil gave to the husband a demonstrative legacy entitled to priority of payment out of the proceeds of sale of Woodley property; that is, priority over gifts and charges that have a claim inferior to the husband's legacy.

We do not think it will be disputed that costs of administration have priority over the legacies. Costs of administration, including costs of this appeal, should first be paid out of the $19,021.70, or whatever the sum is that remains on hand. After these costs have been paid, the balance will not be enough to pay even the $14,432.40 to the husband. The questions are: does the husband get all the balance; do the granddaughters and brother get nothing; or do the husband, granddaughters, and brother share proportionately in the distribution of the balance?

The decree is that the sums awarded to the granddaughters are the value of their respective life interests in the Woodley property and that the $2,100.00 to the brother is the value of the lot he was authorized to select from the Woodley property. There is no argument that the court erred in making these three awards. They represent the share of the Woodley property given, by the will, to granddaughters and brother. These awards stand in place of a part of the Woodley property itself. The decree, in effect, gives to these awards the quality of a demonstrative legacy payable out of proceeds of sale of Woodley property.

How, then, does the bequest to the husband stand ahead of the awards to granddaughters and brother? The bequest to husband comes out of Woodley property. The awards come out of Woodley property. We are of opinion that the bequest and the awards stand on the same ground and have equal priority. On that holding, the bequest and awards should be paid proportionately out of any balance that may remain after costs of administration and appeal are paid.

To make our holding clear, we will use approximate numbers. On final distribution the trial court will use exact numbers. The bequest of $14,000.00 to husband, the award of $3,000.00 to one granddaughter, of $3,000.00 to the other granddaughter, and of $2,000.00 to the brother, should be paid in the following shares of the remaining balance: to husband fourteen twenty-seconds (14/22), to each granddaughter three twenty-seconds (3/22), and to brother two twenty-seconds (2/22).

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.

## ON REHEARING

COLEMAN, Justice.

By the trial court's decree, the granddaughters and the brother are given sums of money payable out of proceeds of sale of Woodley property. By our decision, the husband also is awarded a sum payable out of proceeds of sale of Woodley property. The grandson is given the Adams Street property itself, subject to the condition that the son must "keep up the payments" on the property.

The husband and the granddaughters contend, on rehearing, that we erred in not declaring that the Adams Street property, as well as the proceeds of the sale of the Woodley property, should bear the payment of debts and costs of administration.

Husband says in brief that the provision in the first codicil for payment to the husband should take precedence over provisions which might be defeated by sale of the Woodley property, and, on the other hand, if the foregoing statement be incorrect, ". . . . then the decree is erroneous in finding an intent on the part of testatrix

to exempt the Adams Street property from its share of the necessary abatement."

The granddaughters agree with the husband's contention that the Adams Street property should share ratably in the abatement.

In response to this contention we have again examined the record and especially the will and codicils, keeping in mind the primary and controlling principle that the intent of the testatrix is to be ascertained and given effect.

What is the intent of testatrix with respect to priority of the gifts to these parties? What is the nature of the respective gifts?

Is it the intention of testatrix that the gift to grandson shall also abate if the Woodley property is insufficient to pay in full the debts and costs of administration and the gifts to granddaughters, brother, and husband?

We will not undertake to state in detail all the qualities or considerations which make up a specific devise. For the purposes of determining priority, we pretermit discussion of preference between gifts of personalty and realty and will regard the gift to the grandson as a specific devise which has at least the qualities of a specific legacy of personalty. The gifts out of Woodley property to granddaughters, brother, and husband we regard as of the nature of demonstrative legacies.

" ' "A specific legacy is a bequest of a particular article or specific part of the testator's estate which is so described and distinguished from all other articles or parts of the same as to be capable of being identified." "A demonstrative legacy is a bequest of money or other fungible goods, charged upon a particular fund in such way as not to amount to a gift of the corpus of the fund, or to evince an intention to relieve the general estate from liability in case the fund fail, and so described as to be undistinguishable from other

things of the same kind." "A general legacy is a bequest chargeable upon the general estate, and not so given as to be distinguishable from other parts of the estate of the same kind," or, as otherwise defined "a general legacy is one of *quantity* merely, and includes all legacies not embraced within the definitions of specific and demonstrative legacies." (Citations Omitted.)' (Citation Omitted.)

"A demonstrative legacy bears some likeness to a specific legacy in that it is charged upon or its payment directed from a named fund, but it is in fact a type of general legacy, payable from the general estate, in case the specified fund fails. (Citations Omitted.)" Willis v. Barrow, 218 Ala. 549, 551, 552, 119 So. 678, 680.

In the instant case, however, there are no general assets other than the proceeds of the sale of Woodley property, and those proceeds are the very fund from which the demonstrative gifts to granddaughters, brother, and husband are payable.

The broad statement is sometimes made that demonstrative legacies abate with specific ones where there is a deficiency of assets. 57 Am.Jur. 982, Wills, § 1459. It is also said, however,

"The cases are few in which the question of precedence in abatement has arisen between specific and demonstrative legacies, which is somewhat surprising in view of the numerous cases where the abatement of general legacies is involved. No hard and fast rule can be formulated as to which of these two classes should abate first, since the courts strive to give effect to what they think would have been the intention of the testator could he have foreseen the contingency causing the difficulty. The question, therefore, is always one of the interpretation of the will. Recourse must be had to it and other proper circumstances to discover what preference the testator would

probably have had with reference to his legatees in order to apply that preference to the abatement of the legacies. It is not a surprising matter, therefore, to find demonstrative legacies abating sometimes with specific legacies and sometimes before them." 4 L.R.A. (N.S.) 922, 923.

If costs and debts are charged against the specific devise of the Adams Street property, there will be an increase in the amount available to pay the demonstrative legacies to granddaughters, brother, and husband. The effect is to use a part of the Adams Street property to increase the demonstrative legacies. We come then to decide, in effect, whether demonstrative legacies, or a part of them, are payable out of a specific devise or a specific legacy under the circumstances of this case.

Suppose the mortgage debt on Woodley property had been equal to or greater than the price which sale of Woodley property would bring and that the value of the only remaining asset of the estate, Adams Street property, had been sufficient to pay all debts and costs of administration and to provide also a surplus after such debts and costs had been paid. Now, the Adams Street property is devised to the grandson. "He alone" is to receive it. Did testatrix intend that granddaughters, brother, and husband should be entitled, in such a case, to have all or a part of their respective demonstrative legacies paid out of Adams Street property? We think it is clear that the answer is no, and that granddaughters, brother, and husband should have no right to share in the property specifically devised to grandson. The demonstrative legacies are payable out of proceeds of sale of Woodley property. If there should be no proceeds from sale of Woodley property, the demonstrative legatees would not be entitled to any payment unless out of the residue, and the residue has been exhausted. If the demonstrative legatees be permitted to share in Adams Street property, then the grandson alone would not receive it.

There is one consideration which the parties have not argued. The second codicil recites that testatrix has " . . . . deemed it best . . . . for my new grandchild (the grandson) . . . . to share and share alike in the benefits of our home at 2566 Woodley Rd and the acreage and other property—he is to share this with . . . . his half sisters." (Par. Added.)

Now the court has adjudged that the granddaughters were given life estates in the garage apartment, together with a lot of 100 feet by 200 feet; and, acting on testimony as to the value of the garage apartment and lot, the court finds that the values of the life interests of the granddaughters are $3,493.69 and $3,467.44, respectively. No objection has been raised to this part of the decree. We do not raise objection to it now, but we do inquire whether the grandson was entitled "to share and share alike" with his half sisters in the Woodley property and to have awarded to him the value of his own life interest in the property.

The decree does not award to the grandson any interest in the proceeds of sale of Woodley property. That, we think, is a circumstance to be considered in deciding what testatrix intended in event of a deficiency of assets. If the decree carries out her intent in not awarding the grandson an interest in the Woodley property, then we think such a construction shows the further intent that the grandson should be required to pay the $10,000.00 mortgage on Adams Street property but no other debt of testatrix or costs of administration of her estate.

In the decree on rehearing, the trial court decreed that all "debts and claims" be paid " . . . . out of the residue." We understand the decree to refer to the proceeds of sale of Woodley property as the residue. Debts and costs are ordered paid out of that residue. The effect of the decree on rehearing is to place, on the proceeds of sale of Woodley property, primary liability for costs of administration and for all debts except the mortgage on Adams

Street property. We affirm the holding that, until after proceeds of sale of Woodley property have been exhausted, Adams Street property is not liable for costs of administration or for any debt other than the mortgage on Adams Street property.

We think we should write to some further features of our decision with respect to liability of parties for costs.

As stated on original deliverance, all appellees, except the executor, united against the husband in support of the decree wherein the court denied any payment to the husband. On the husband's appeal we reversed that holding.

We also said that the "Costs of administration, including costs of this appeal . . . ." should be paid out of the money which remains in the hands of the executor. On further consideration, we are of opinion that the quoted directions as to payment of costs of appeal should be modified.

■■■ Since appellant is successful on this appeal and on the cross-appeal, all costs of appeal should be assessed against the following appellees: Maury D. Smith, as guardian ad litem for J. Ed Pepperman, Jr., Jean Pepperman, and Ed Pepperman Sealy, minors; John C. Godbold, as guardian ad litem for Candace Tartt Sealy and Cynthia Anne Sealy, minors; and Cornelia Sealy. Shaddix v. Bilbro, 220 Ala. 657, 127 So. 227.

■■■ A cross-appeal was taken on behalf of the two granddaughters. They were not successful on the cross-appeal, and, for that reason, we are of opinion that the costs of the cross-appeal should be assessed against the cross-appellants.

No part of the costs of appeal or cross-appeal is to be assessed in anywise against the estate of testatrix.

Appellant argues, on rehearing, that the fees allowed the guardians ad litem should be paid out of the estates given to their respective wards. The June 12, 1962, decree of the circuit court recites that $18,085.19 remained in the registry of the court and ordered the register to pay to the guardians ad litem the respective amounts allowed to them for services as guardians ad litem. We understand the decree to order that the guardian ad litem fees be paid out of the proceeds of sale of Woodley property. We have not found where appellant assigned those rulings of the circuit court as error or argued the point in original brief.

■■■ Where a question is not raised in brief at the submission of the cause or until after judgment has been rendered by this court, the question is not ordinarily due to be considered on application for rehearing. Robinson v. Allison, 97 Ala. 596, 12 So. 604; Rudolph v. Rudolph, 251 Ala. 317, 36 So.2d 902. Under the rule, appellant's contention as to payment of guardian ad litem fees is not to be considered as a basis for granting a rehearing.

The husband requests us "to clarify" the opinion with respect to taxation of costs in the trial court. The opinion says "Costs of administration," should first be paid out of the sum remaining in the hands of the register. We think the opinion, in this respect, merely affirms the decree of June 12, 1962, which recites:

"Costs are taxed against the petitioner, J. Ed Pepperman as executor of said estate."

■■■ We do not understand that the husband, on submission in this court, assigned the taxation of costs as error or argued the point in brief on original hearing. If our understanding is correct, the husband is not entitled to raise the point for the first time on rehearing. Robinson v. Allison, supra; Rudolph v. Rudolph, supra.

The opinion is modified with respect to taxation of costs of appeal and cross-appeal. In all other respects we adhere to our original decision.

Opinion modified and extended.

Application overruled.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.